**MATT LAW OFFICE, PLLC**
**Terryl T. Matt, Esq.**
**Joseph F. Sherwood, Esq.**
310 East Main Street
Cut Bank, MT  59427
Telephone:  (406) 873-4833
Fax No.:      (406) 873-0744
terrylm@mattlawoffice.com
joes@mattlawoffice.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, GREAT FALLS DIVISION

| | |
|---|---|
| FORT BELKNAP INDIAN COMMUNITY, | CV 22-103-GF-JTJ |
| Plaintiff, | **PLAINTIFF'S AMENDED COMPLAINT FOR DAMAGES FOR:** |
| vs. | **(1) INJUNCTIVE RELIEF** |
| | **(2) BREACH OF CONTRACT** |
| THE UNITED STATES OF AMERICA; the UNITED STATES DEPARTMENT OF INTERIOR; DEB HAALAND, in her official capacity as United States Secretary of the Interior; BRYAN NEWLAND, in his official capacity as Acting Assistant Secretary of the Interior for Indian Affairs; DARRYL LACOUNTE, director of the Bureau of Indian Affairs; RICHARD GLENN MELVILLE, in his official capacity as Acting Deputy Bureau Director, Office of Justice Services; and LENORA NIOCE, in her official capacity | **(3) BREACH OF CONTRACT** **(ANTICIPATORY REPUDIATION)** **(4) VIOLATION OF ADMINISTRATIVE** **PROCEDURES ACT, 5 U.S.C. §§ 701-06** **DEMAND FOR A JURY TRIAL** |

1

as Bureau of Indian Affairs Special Agent
in Charge/Approving Official,

                         Defendants.

      Plaintiff Fort Belknap Indian Community ("FBIC" or "Tribe"), by and through the undersigned counsel, respectfully petitions this Court for injunctive and other relief and states as follows:

## PARTIES

1. Plaintiff FBIC is a federally recognized Indian tribe that is entitled to receive federal services by virtue of its status as an Indian tribe. *Indian Entities Recognized by and Eligible to Receive Services from the United States Bureau of Indian Affairs*, 87 Fed. Reg. 4636 (January 28, 2022).

2. The Fort Belknap Indian Reservation is homeland to the Gros Ventre (Aaniiih) and the Assiniboine (Nakoda) Tribes, both of which comprise the government of FBIC. The Tribe's governmental headquarters is located at 656 Agency Main St., Harlem Montana 59526.

3. Defendant the United States of America, acting by and through the Department of the Interior (DOI) and Bureau of Indian Affairs (BIA), as a matter of federal

2

statutory, regulatory, and common law, is responsible for the actions of the other

defendant parties as described below.

4.   Defendant DOI is a federal cabinet-level agency charged by Congress with fulfilling

the Federal Government's treaty and trust responsibility to the Tribe and with

implementing the statutes described herein.  By statute, the DOI, acting through the

Secretary, provides for the day-to-day federal and Tribal law enforcement services

on its federally established Fort Belknap Indian Reservation.  25 U.S.C. § 2802.

5.   Defendant Deb Haaland is sued in her official capacity as the Secretary of the DOI

("Secretary").  The Secretary of the DOI is responsible "for providing, or for assisting

in the provision of law enforcement services in Indian country . . . ."  25 U.S.C. §

2802(a).  The Secretary, as head of an executive department, reports directly to the

President of the United States, *see* 43 U.S.C. § 1451, and is responsible for directing

and supervising all operations and activities of DOI, including providing law

enforcement services to tribes and supervising expenditure of appropriated funds

by the DOI's BIA under 25 U.S.C. § 13.

6.   Defendant Bryan Newland, or his successor, is the Assistant Secretary—Indian

Affairs ("Assistant Secretary") of the DOI BIA and is being sued in his official

capacity as an officer and agent of the United States Government.  The Assistant

Secretary is established under the authority contained in 43 U.S.C. § 1453.  The

3

Assistant Secretary is directly responsible with the Secretary for the decisions made by the DOI's BIA, and its officers and employees in providing law enforcement services to tribes.

7. Defendant Darryl LaCounte is the director of the BIA and is sued in his official capacity.

8. Defendant Richard Glenn Melville, or his successor, is being sued in his official capacity as a deputy to Defendant Newland, with the official title of Acting Deputy Bureau Director, Office of Justice Services ("BIA-OJS"). BIA-OJS is the exclusive federal entity charged with maintaining law and order on Indian reservations.

9. Defendant Lenora Nioce, or her successor, is a Special Agent in Charge/Approving Official for the BIA and is sued in her official capacity.

10. Collectively, the U.S., the DOI, Secretary Haaland, Assistant Secretary Newland, Director LaCounte, Deputy Bureau Director Melville, and Special Agent/Approving Official Nioce are referred to as "Defendants."

## JURISDICTION AND VENUE

11. This is an action for monetary damages and injunctive relief presenting a federal question within the Court's jurisdiction under the Indian Self-Determination and Education Assistance Act, 25 U.S.C. §§ 5301 and 5321, *et seq.* ("ISDEAA"); the Administrative Procedures Act, 5 U.S.C. § 702 ("APA"); and federal common law; to

4

secure relief for violations of rights guaranteed thereunder.  Jurisdiction is therefore

proper pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

12. Jurisdiction is also proper pursuant to 28 U.S.C. § 1362, which provides that "district

courts shall have original jurisdiction of all civil actions, brought by any Indian tribe

or band with a governing body duly recognized by the Secretary of the Interior,

wherein the matter in controversy arises under the Constitution, laws, or treaties of

the United States."

13. This Court has authority to grant injunctive relief pursuant to 25 U.S.C. § 5331(a),

and its inherent authority to issue equitable relief.

14. This Court further has jurisdiction pursuant to the APA, 5 U.S.C. § 702.

15. The Defendants have waived sovereign immunity pursuant to 25 U.S.C. §§

5321(b)(3) and 5331(a) for civil actions or claims against the United States for relief

including money damages and injunctive relief.  Sovereignty of the United States is

expressly waived because the language of the statute grants the United States

district courts original jurisdiction to hear matters "over any civil action or claim

against the appropriate Secretary arising under this chapter and, subject to the

provisions of subsection (d) of this section and concurrent with the United States

Court of Claims, over any civil action or claim against the Secretary for money

damages arising under contracts authorized by this chapter." 25 USC § 5331(a).

5

Further, by statute, the district courts may order appropriate relief "including money damages, injunctive relief against any action by an officer of the United States or any agency thereof contrary to this chapter or regulations promulgated thereunder, or mandamus to compel an officer or employee of the United States, or any agency thereof, to perform a duty provided under this chapter or regulations promulgated hereunder (including immediate injunctive relief to reverse a declination finding under section 5321(a)(2) of this title or to compel the Secretary to award and fund an approved self-determination contract)." 25 USC § 5331(a).  This Court's jurisdiction is therefore proper because (1) this is an action brought in the United States district court, (2) alleging violations under Chapter 25 and the ISDEAA, and (3) seeking relief against a determination by an officer of the United States or an agency thereof that was contrary to the ISDEAA, seeking injunctive relief to reverse a declination finding under 25 U.S.C. § 5321(a)(2), and seeking to compel the Secretary of the Interior to award and fund a self-determination contract. *See Navajo Nation v. United States Dep't of Interior*, 57 F.4th 285, 291 (D.C. Cir. 2023) (determining district court had subject matter jurisdiction pursuant to 25 U.S.C. § 5331(a), which confers original jurisdiction to adjudicate a tribe's claim for damages against the DOI arising out of a self-determination contract authorized by the ISDEAA).

16. The Defendants further have waived sovereign immunity under 5 U.S.C. § 702 of the APA, for all claims for relief other than monetary damages, including all forms of equitable relief, involving a federal official's action or failure to act.

17. Venue is proper in this Court under 28 U.S.C. § 1391 because Plaintiff FBIC is located with the District of Montana, Great Falls Division.

## STATEMENT OF FACTS

18. The Tribe's reservation is approximately 637,000 acres and has approximately 3,182 people living within its boundaries that receive tribal law enforcement services.

19. The Reservation is Indian Country under 18 U.S.C. § 1151.

20. The Tribe's members are dependent on federally funded law enforcement officers to protect them and their on-reservation property.

21. As a sovereign governing its Reservation and its members, the Tribe has a strong interest in its members' health, well-being, and safety.  The population of the Reservation is substantially harmed by violent crime, crimes against children and vulnerable adults, missing persons, drug-related crime, and the resulting impacts to the entire Reservation community.

22. The Tribe and Defendants BIA-OJS entered into Contract No. A21AV00237, a Public Law 93-638 Contract ("638 Contract") and an Annual Funding Agreement ("AFA") for law enforcement services in 1997.  (Aff. Gary LaMere Jr., ¶ 8, October 20, 2022,

attached hereto as **Exhibit A**).  A true and correct copy of the Tribe's 638 Contract, No. A21AV00237, is attached hereto as **Exhibit B.**

23. Since the initial 638 Contract, the Tribe has seen little increase in the law enforcement budget contained in the AFA.  (Aff. LaMere Jr., ¶ 8; Aff. Jeffrey Stiffarm, ¶ 10, October 20, 2022, attached hereto as **Exhibit C**).

24. On July 1, 2022, the Tribe submitted its proposed 2022-2023 AFA to BIA-OJS.  The Tribe's total request for funding is $5,294,549.39, which is an increase of $3,815,050.39.

25. Tribe's current number of law enforcement officers and criminal investigators is insufficient to fulfill the Defendants' obligations to keep the peace on the Reservation and protect the people of the Fort Belknap Indian Reservation.  For comparison, from 2015 to 2017, the Mescalero Reservation (approximately 463,000 acres) had approximately 3,156 people living within its boundaries receiving tribal law enforcement services and had a personnel budget of over $2 million.  (Aff. LaMere Jr., ¶¶ 11-12).

26. The Tribe's current budget only pays a fraction of comparable BIA positions:

    a.  The Tribe's Chief of Police is paid 50% of a BIA Chief of Police;

    b.  Six (6) of the seven (7) Tribal Officers are paid at 70% of a BIA Officer;

    c.  One (1) Criminal Investigator makes approximately 50% of a comparable BIA employee;

    d.  Four (4) Dispatchers are paid at approximately 50% of a comparable BIA Dispatcher;

    e.  Secretary is paid at 70% of a BIA secretary.

(Aff. LaMere Jr., ¶ 10).

27. The Tribe's current funding is insufficient to provide the most basic law enforcement services to the Tribe.  (Aff. LaMere Jr., ¶ 15).

28. As a result, the Tribe experiences a chronic shortage of patrol officers and dispatch personnel and it experiences chronic, high levels of violent crimes, property crimes, and substance abuse.  (Aff. LaMere Jr., ¶ 15).

29. Because the Tribe's law enforcement resources are currently only providing for minimum staff at minimal pay, the Tribe is currently unable to offer the following law enforcement services:

    a.  Victim Specialist/Victim Outreach Coordinator

    b.  Drug Investigator

    c.  Program Specialist

    d.  K-9 Officer and Drug Dog

    e.  School Resource Officer

9

f.   Missing and Murdered Indigenous Persons Special Agent

(Aff. LaMere Jr., ¶ 15).

30. With the increased funding included in the proposed 2022-2023 AFA, Tribal law

enforcement would be able to hire more patrol officers to provide more patrol to

outlining areas of the Reservation on a more frequent basis.  The increased funding

would also allow for more officer training and professional development.  (Aff.

LaMere Jr., ¶ 16).

31. The proposed 2022-2023 AFA allows for the hiring of an additional Supervisory

Police Officer, which would bring continuity to the supervision of Tribal law

enforcement by allowing for 24/7 supervisor coverage.  (Aff. LaMere Jr., ¶ 17).

32. The proposed 2022-2023 AFA enables Tribal law enforcement to hire three (3)

trained and certified criminal investigators, including an investigator dedicated to

drug investigations.  This would greatly deter serious crime on the Tribe's

reservation, which would result in more cases ending in federal convictions.  (Aff.

LaMere Jr., ¶ 18).

33. The proposed 2022-2023 AFA enables Tribal law enforcement to hire a K-9 Police

Officer and dog to assist in the drug investigations on the Reservation.  (Aff. LaMere

Jr., ¶ 19).

34. The proposed 2022-2023 AFA enables the Tribe to hire a School Resource Officer to be stationed out of a Tribal school, and actively take part and participate in anti-drug and anti-gang education, as well as awareness initiatives with Tribal youth. (Aff. LaMere Jr., ¶ 20).

35. The proposed 2022-2023 AFA also enables the Tribe to hire a Victim Specialist/Victim Outreach Coordinator, a Program Specialist, additional Dispatchers, and an additional Secretary.  All of these positions would aid in providing adequate and modern law enforcement services to the Tribe.  These positions will also support compliance with federal regulations and mandates.  (Aff. LaMere Jr., ¶ 21).

36. A review of AFAs from 2015 to 2022 show that the Defendants have been underfunding Tribal law enforcement by approximately 50% for salaries and 75% for operational costs.  (Aff. LaMere Jr., ¶ 22).

37. In the past, patrol officers have regularly been required to patrol the entirety of the Reservation, many times alone. (Aff. Stiffarm, ¶ 5).

38. From 2018 to 2021, the FBIC Tribal Council had requested additional funding.  BIA responded by providing "one time funding" to be used for buying equipment.  This funding did not provide for salaries and the equipment excluded firearms necessary

11

for performance of effective law enforcement functions.  The "one time funding" also meant the Tribe was ineligible for contract support costs.  (Aff. Stiffarm, ¶ 9).

39. Defendants have arbitrarily and capriciously appropriated the Tribe's 638 contract funds over the years.  On August 4, 2022, Defendant BIA-OJS found $1,213,743.00 and issued it to the Tribe pursuant to Modification No. 6 of the 638 Contract as a base increase and "one time" program funding for a "Period of Performance: 10/01/2020 to 09/30/2023." Modification No. 6 further provides: "All other terms and conditions remain the same." A true and correct copy of Modification No. 6 to Contract No. A21AV00237 is attached hereto as **Exhibit D.**

40. Lack of funding throughout the years has caused FBIC to regularly encounter compliance issues when completing its annual funding review. (Aff. Stiffarm, ¶ 11).

41. The current 2022-2023 AFA is insufficient to fund Tribal law enforcement at the same level as if the Defendants otherwise provided for the operation of the programs.  (Aff. LaMere Jr., ¶¶ 22-23).

42. On August 24, 2022, Defendant BIA-OJS issued a letter to the Tribe denying the proposed 2022-2023 AFA and requesting the Tribe resubmit its proposed AFA without the requested increased amount.

43. On September 26, 2022, Defendant BIA-OJS issued a letter to the Tribe, partially declining the proposed 2022-2023 AFA for all funding above $1,353,247.   Defendant

BIA-OJS's partial declination letter failed to include any references to the criteria used by Defendants to determine funding.  A true and correct copy of Defendant BIA-OJS's partial declination letter is attached hereto as **Exhibit E.**

44. Defendants' partial declination of the Tribe's proposed 2022-2023 AFA for all funding above $1,353,247 continues leaving the Tribe without adequate law enforcement services on the Reservation.

## CAUSES OF ACTION

### COUNT ONE

### Injunctive Relief

45. The Tribe incorporates all prior allegations as if fully set forth herein.

46. Defendants have nondiscretionary statutory and contractual obligations to ensure law and order on the Tribe's reservation under the ISDEAA, 25 U.S.C. §§ 5301 and 5321, *et seq.*  25 U.S.C. 5321(a)(1) specifically provides that "[t]he Secretary [of the Interior] is directed, upon the request of any Indian tribe by tribal resolution, to enter into a self-determination contract or contracts with a tribal organization to plan, conduct, and administer programs or portions thereof . . . ."  *See also* 25 U.S.C. § 5304(i) (defining "Secretary" as either the Secretary of Health and Human Services or the Secretary of the Interior or both."); 25 U.S.C. § 5304(j) (defining "self-determination contract" as a contract "between a Tribal organization and the

13

appropriate Secretary for the planning, conduct, and administration of programs or services that are otherwise provided to Indian Tribes and members of Indian Tribes pursuant to Federal law . . . .").

47. Defendants' statutory and contractual duties to ensure law and order for the Tribe requires them to provide sufficient financial support for law enforcement services adequate to provide prompt and diligent investigation, reporting, and immediate arrest and punishment of offenders within the reservation.

48. Defendants have failed to perform their nondiscretionary statutory and contractual duties to the Tribe by failing to adequately fund law enforcement services for the Tribe to protect public safety and ensure law and order within the Tribe's reservation.

49. Under 25 U.S.C. § 5331(a), this Court may order appropriate relief including money damages, injunctive relief against any action by an officer of the United States, or any agency thereof, contrary to ISDEAA, or mandamus to compel a federal officer or employee to perform a duty imposed by the ISDEAA, "including immediate injunctive relief to reverse a declination finding under [25 U.S.C. §] 5321(a)(2) . . . or to compel the Secretary to award and fund an approved self-determination contract."

14

50. Further, under 25 U.S.C. § 5321(g), "each provision of [the ISDEAA] and each provision of a contract or funding agreement shall be liberally construed for the benefit of the Indian Tribe." 25 U.S.C. § 5321(g); accord 25 C.F.R. § 900.3(a)(5). *Navajo Nation v. United States Dep't of Interior*, 57 F.4th 285, 294 (D.C. Cir. 2023).

51.  The Tribe is entitled to injunctive relief enjoining Defendants from distributing law enforcement funding at levels below what is required to fulfill the Defendant's statutory and contractual obligations to the Tribe based on the current law enforcement service population of 3,182 people.

52. The Tribe is entitled to injunctive relief compelling the Secretary to award and fund the 2022-2023 AFA in the amount of $5,294,549.39.

## COUNT TWO

### Breach of Contract

53. The Tribe incorporates all prior allegations as if fully set forth herein.

54. By partially declining the Tribe's 2022-2023 AFA and paying only $1,353,247, the Defendants breached the contract.

55. Defendants are liable to the Tribe for monetary damages in an amount to be determined at trial, including the direct and indirect program costs incurred by the Tribe, *see* 25 U.S.C. § 5304(c) and (f), plus reasonable fees and costs, including attorney fees.

15

**COUNT THREE**

**Breach of Contract (Anticipatory Repudiation)**

56. The Tribe incorporates all prior allegations as if fully set forth herein.

57. The Tribe's 638 Contract, Contract No. A21AV00237, incorporates the Defendants'

statutory duty to fully fund the Tribe's law enforcement services.

58. Despite the incorporation of Defendants' statutory duties, Section (1)(b)(4) of

the Tribe's 638 Contract, Contract No. A21AV00237, states:

> FUNDING AMOUNT. Subject to the availability of appropriations, the
> Secretary shall make available to the Contractor [Tribe] the total amount
> specified in the annual funding agreement incorporated by reference in
> subsection (f)(2).  Such amount shall not be less than the applicable
> amount determined pursuant to section 106(a) of the [ISDEAA] (25 U.S.C.
> 450j-1).

59. Modification No. 6 to the 638 Contract provides the funding amount "shall

not be less than the applicable amount determined pursuant to Section 106(a)

of the Indian Self-Determination and Education Assistance Act (25 U.S.C.

5301 et. seq.)." Modification No. 6 further provides: "This amount is subject to

the availability of appropriation."

60. Defendants remain liable to the Tribe under ISDEAA, the provisions of which

are incorporated into the Tribe's 638 Contract, Contract No. A21AV00237, for

the full amount of the contract and support costs regardless of whether

sufficient appropriated funds exist. *See Ramah Navajo Chapter v. Salazar*, 644

16

F.3d 1054, 1057 (10th Cir. 2011) (quoting *Cherokee Nation of Oklahoma v. Leavitt*,

543 U.S. 631, 125 S. Ct. 1172 (2005) ("[I]f the amount of an unrestricted

appropriation is sufficient to fund the contract, the contractor is entitled to

payment even if the agency has allocated the funds to another purpose or

assumes other obligations that exhaust the funds.").

61. Defendants' partial declination of the Tribe's proposed 2022-2023 AFA for all

funding above $1,353,247 is an anticipatory breach of the Defendants'

contractual obligations to fully fund the Tribe's law enforcement programs.

62. Defendants are liable to the Tribe for monetary damages in an amount to be

determined at trial, including the direct and indirect program costs incurred

by the Tribe, *see* 25 U.S.C. § 5304(c) and (f), plus reasonable fees and costs,

including attorney fees.

**COUNT FOUR**

**Violation of Administrative Procedures Act, 5 U.S.C. §§ 701-06**

63. The Tribe incorporates all prior allegations as if fully set forth herein.

64. The Tribe requested the Defendants to approve the Tribe's 2022-2023 AFA in July

2022.

65. Defendant agencies DOI and BIA-OJS have unlawfully, and arbitrarily and

capriciously, withheld or denied action on the Tribe's 2022-2023 AFA.

66. The Tribe requests injunctive relief pursuant to 5 U.S.C. §§ 705-06 compelling the Defendant agencies to take immediate action that has otherwise been unlawfully withheld or denied with respect to the Tribe's 2022-2023 AFA.

67. The Tribe is entitled to its attorney fees and costs under the Equal Access to Justice Act, 5 U.S.C. § 504(a)(1), which requires an agency conducting an adversary adjudication to award the prevailing party its fees and other expenses incurred by that party in connection with the proceeding.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in its favor against Defendants, and award the following relief:

A.  Issue injunctive relief requiring Defendants to take immediate action to remedy their failures, including immediate approval of the Tribe's proposed AFA;

B.  Award the Tribe monetary damages in an amount to be proven at trial;

C.  Award the Tribe restitution and reimbursement in an amount to be determined at trial;

D.  Award the Tribe its costs and attorney fees incurred herein under 28 U.S.C. § 2412 and 5 U.S.C. § 504, and any other applicable law;

E.  Grant the Tribe such other relief as this Court may deem just and proper.

## **<u>JURY DEMAND</u>**

Pursuant to the Federal Rules of Civil Procedure, Rule 38, plaintiffs, demand trial of all issues triable by a jury.

DATED this 16th day of November 2023.       MATT LAW OFFICE, PLLC

<u>/s/ Terryl T. Matt</u>
Terryl T Matt,Esq.

Attorneys for Plaintiff FBIC

19